A. C. Becken Co., a corporation of Illinois v. Commissioner.
A. C. Becken Co. v. Commissioner
Docket No. 11600.
United States Tax Court
1947 Tax Ct. Memo LEXIS 129; 6 T.C.M. (CCH) 880; T.C.M. (RIA) 47211; July 28, 1947
*129 Lorentz B. Knouff, Esq., 208 LaSalle St., Chicago, Ill., for the petitioner. David F. Long, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies for a fiscal year ended January 31, 1942 of $2,089.82 in income tax, $927.76 in declared value excess-profits tax, and $6,387.82 in excess profits tax. The only issue for decision is whether the Commissioner erred in disallowing the entire amount claimed as an addition to the reserve for bad debts. Findings of Fact The petitioner was incorporated in 1932 under the laws of the State of Illinois. It is engaged in the wholesale jewelry business. Its federal income and declared value excessprofits tax and excess-profits tax returns for the taxable year ended January 31, 1942, were filed with the collector of internal revenue for the first district of Illinois. The respondent, on June 30, 1936, granted the petitioner permission to change to the reserve method of deducting bad debts. The petitioner claimed a deduction for an addition to its reserve for bad debts in the amount of $27,585.16 on its federal income and declared value excess-profits income tax return *130 for the year ended January 31, 1942. The respondent disallowed the entire addition to the reserve and stated in his notice of deficiency dated May 16, 1946: "It is determined that any addition during the fiscal year ended January 31, 1942 by you to your reserve for bad debts would not be reasonable; consequently the sum of $27,585.16 representing the addition made by you to your reserve for bad debts during the fiscal year ended January 31, 1942 has been and is disallowed in its entirety as a deduction from gross income for said year." The petitioner's books and records with respect to its reserve for bad debts for the years ended January 31, 1937 to 1945, inclusive, disclose charge-offs less recoveries, other charges, additions to reserve, and balance of reserve account, as follows: Year Ended
Charge-Offs Less
Other
Additions to
Balance Reserve
January 31
Recoveries
Charges
Reserve
Account
1937
$11,157.46
$ 43,157.46
$ 32,000.00
1938
26,235.39
43,000.00
48,764.61
1939
11,506.83
34,391.38
71,649.16
1940
5,419.50
19,481.34
85,711.00
1941
7,600.14
$8,597.85 (a)
22,116.94
91,629.95
1942
9,357.79
27,585.16 (b)
109,857.32
1943
1,858.11
107,999.21
1944
2,527.51
110,526.72
1945
1,423.87
111,950.59
Totals
$73,135.22
$8,597.85
$193,683.66
*131 The petitioner's federal income tax returns for the years ended January 31, 1937 to 1945, inclusive, disclose gross sales, and the balance of notes and accounts receivable, as follows: Balance of Notes
and Accounts
Year Ended
Annual
Receivable
January 31
Gross Sales
January 31
1937
$ 1,854,800.52
$ 338,390.68
1938
2,119,834.69
408,317.29
1939
1,719,568.77
360,999.18
1940
1,949,101.94
396,032.83
1941
2,211,733.11
474,521.39
1942
2,758,515.67
432,267.92
1943
2,267,304.91
118,241.71
1944
2,186,761.85
117,964.20
1945
2,256,291.94
111,896.55
Totals
$19,323,913.40
$2,758,631.75
The balance shown above for January 31, 1942 included notes in the amount of about $60,000 covering the accounts involving the greatest risks. None of the accounts were then more than one year past due. The customers were thoroughly investigated before they were given credit. A number of manufacturers from whom *132 the petitioner had been purchasing a large part of its merchandise notified it shortly after December 7, 1941 that they were converting completely to war work and would no longer be able to supply the petitioner. Jewelry was then difficult to obtain but not difficult to sell. The petitioner knew at that time that it would have to obtain new lines of merchandise to supplement its jewelry business and it did not know what the results would be or how serious the effects of the war would be on its business. The unused balance of $82,272.16 in the reserve account at January 31, 1942 was adequate to cover all losses then reasonably foreseeable in the accounts and notes receivable due the petitioner at that time and no addition to the reserve was justified or appropriate at that time. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The balance in the reserve at the end of the taxable year, before the contested addition was $82,272.16. Charges to the account representing the excess of actual bad debts over recoveries for the six years from 1937 to the end of the taxable year amounted to $71,277.11. Thus, the unused balance in the reserve exceeded *133 the losses for bad debts over a six-year period by $10,995.05, was about 6.92 times the average annual losses for that period, and was more than three times the largest total loss in any one of those years. Accounts receivable on January 31, 1942 were slightly above average for the period but were less than they were on January 31, 1941, which means that collections for the year had exceeded the large sales for that year. The balance in the reserve was grossly excessive based upon past experience alone. The petitioner called as witnesses the president and the credit manager of the petitioner who, apparently, were responsible for the addition of $27,585.16 here in question. They explained why they had concluded that the addition would be proper. They were moved by the uncertainties incident to the war, the difficulties in obtaining the regular lines of merchandise, the probability that retailers and others would go into the armed forces or war work, and their past experience during depression years. They were not trying to dodge taxes and their testimony has been given the careful consideration and weight which it deserves. Cf. . *134 Their apprehensions are understandable but they did not show that they had any good reason to believe that more than $82,272.16 would be lost in collecting on the $432,267.92 then due. That reserve appears to have been ample to take care of all losses on those accounts then reasonably foreseeable. It was far in excess of what had proven necessary in peacetime, including some poor years, and was sufficient to take care of the uncertainties in collections which might be expected even in times of war. The statute authorized a reasonable addition to the reserve. This court is charged with the duty of saying what it thinks would be a reasonable addition under all of the evidence presented to it. Cf. ; ; . Since the petitioner had an ample reserve on January 31, 1942, built up by additions in prior years in excess of actual losses, it was not entitled to a deduction for any further addition to the reserve at the close of the taxable year. No addition would have been reasonable under conditions then existing. Decision *135 will be entered for the respondent. Footnotes
a. This charge represents adjustment made by revenue agent for fiscal year 1/31/39 reducing the addition to reserve for bad debts for that year from 2% to 1 1/2% of sales. ↩
b. This amount is at issue in the instant proceeding.↩